IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,

    v.                                            No. 1:15-mj-573 (MSN)

WERNER AGUSTIN-CABRERA,

        Defendant.

## PETITION FOR WRIT OF
## *CORAM NOBIS* AND VACATUR OF CONVICTION

Defendant Werner Agustin-Cabrera, by and through counsel, hereby respectfully submits this Petition, pursuant to 28 U.S.C. § 1651(a), for the Court to issue a writ of *coram nobis* and vacate his possession-of-marijuana conviction. His conviction should be vacated pursuant to *Padilla v. Kentucky*, 559 U.S. 356 (2010), because his then-attorney confirms in an attached Declaration that he did not advise Mr. Agustin-Cabrera, who was known to be an alien, that his conviction might cause adverse immigration consequences. Recently, however, Mr. Agustin-Cabrera was taken into ICE custody, and his marijuana conviction is having substantial adverse consequences. Specifically, even though he has a pending application for a U Visa as a victim of violent crime who assisted law enforcement in prosecuting the offense, his marijuana conviction may cause his removal before that application can be adjudicated. Because Mr. Agustin-Cabrera learned of these consequences only recently, a writ of coram nobis is the appropriate remedy for the constitutionally ineffective assistance of counsel he received before entering a guilty plea.

## BACKGROUND

At 10:19 p.m. on October 29, 2015, a United States Park Police officer encountered Mr. Agustin-Cabrera, who was sleeping in the backseat of his car at the Collingwood Picnic Area adjacent to the George Washington Memorial Parkway in the Eastern District of Virginia. Because the park was closed after dark, the officer approached the vehicle to speak with Mr. Agustin-Cabrera, who woke up and rolled down the window when the officer approached. The officer detected a smell of marijuana, searched the vehicle, and found a single hand-rolled cigarette containing what was later determined to be 1.1 grams of marijuana. Mr. Agustin-Cabrera was cooperative during his interaction with law enforcement, and admitted ownership of the backpack in which the cigarette was found. The officer cited him for possessing marijuana in violation of 21 U.S.C. § 844 and for being in the park after the posted closing time in violation of 36 C.F.R. § 1.5(f).

Mr. Agustin-Cabrera appeared for court as directed, an attorney was appointed, and on January 5, 2016, pleaded guilty to possession of marijuana. Pursuant to an oral plea agreement, the closure violation was dismissed in exchange for his guilty plea to the marijuana charge. He had a clean record and was sentenced to six months of pre-judgment probation under 18 U.S.C. § 3607. *See* Order of Probation Pursuant to 18 U.S.C. § 3607 (doc. 9). Later, on September 13, 2016, a conviction was entered following positive tests for marijuana during probation. *See* Judgment in a Criminal Case (doc. 26) (revoking probation, entering a conviction, and remanding Mr. Agustin-Cabrera into custody, to be released at 5 p.m. that day). According to discovery provided to Mr. Agustin-Cabrera's counsel by the United

States Attorney's Office, the only identification Mr. Agustin-Cabrera had on his person at the time of the offense was a Guatemalan identification card. *See* Exh. A (selected discovery pages, redacted of personally-identifying information). Further, the discovery listed his birthplace as Guatemala, his citizenship as Guatemalan, and his Alien Registration Number. *See id.*[1]

Despite these indicators that Mr. Agustin-Cabrera was not a United States citizen, his attorney never advised him of any potential immigration consequences that could result from his guilty plea to possession of marijuana. *See* Declaration of Kevin Richard Brehm (copy attached as Exh. B). As his then-counsel explains, he has recently reviewed the files he kept in the course of representing Mr. Agustin-Cabrera, has an independent recollection of the case, and does not recall discussing immigration consequences with Mr. Agustin-Cabrera. *Id.* ¶¶ 3-4. This is consistent with his usual practice, which did not include reviewing immigration consequences with a client considering such a plea. *Id.* ¶ 5. Moreover, immigration consequences were not discussed in the plea colloquy as a potential consequence of Mr. Agustin-Cabrera's plea. *See* Transcript of Change of Plea Proceedings, Jan. 5, 2016 (copy attached as Exh. C).

More than three years later, on December 5, 2019, Mr. Agustin-Cabrera was taken into immigration custody and removal proceedings were initiated. He had not

---

[1] The relevant information was not obscured within a large trove of discovery; rather, three attached pages were among 20 total pages of discovery. To be clear, the discovery provided by the United States Attorney's Office consisted of 25 pages, but two were a cover letter and three were a copy of the Criminal Information.

been charged with a new offense, but it was alleged that he was illegally present in the United States and that he had initially entered the country without inspection. He was detained pending removal proceedings because his marijuana conviction in this case subjected him to mandatory detention while in ICE custody. *See* 8 U.S.C. §§ 1226(c)(1)(A), 1182(a)(2)(A)(ii). Mr. Agustin-Cabrera's removal proceedings remain pending.

On April 1, 2020, the Commonwealth's Attorney for Alexandria, Virginia, completed a "U Nonimmigrant Status Certification" form in support of a "U Visa" for Mr. Agustin-Cabrera.[2] According to that certification, Mr. Agustin-Cabrera was the victim of a violent crime in Alexandria, Virginia in November, 2016, when he was attacked with a carpet knife by a cousin. According to the Commonwealth Attorney's certification, the attack resulted in visible scars to Mr. Agustin-Cabrera's face, arm and hand. Mr. Agustin-Cabrera subsequently testified for the Commonwealth of Virginia against his cousin, who was convicted of felony assault and then deported to Guatemala. According to Agustin-Cabrera's immigration attorney, he is likely to receive a U Visa in light of the Commonwealth Attorney's Certification and his otherwise clean record (his only conviction is the misdemeanor in this case). The process to grant a U Visa, however, takes approximately three years due to a backlog in the immigration court system.

---

[2] A "U Visa" is a type of visa available to individuals who have suffered substantial harm as a crime victim in the United States and have assisted authorities in the investigation or prosecution of the offense. *See* 8 U.S.C. § 1101(a)(15)(U).

Because Mr. Agustin-Cabrera is subject to mandatory detention while in ICE custody, the removal proceeding is likely to be completed years before a U Visa could be approved. Accordingly, the conviction in this case is having a substantial collateral consequence of which Mr. Agustin-Cabrera only recently learned: he is likely to be deported prior to the approval of a U Visa. In that case, he would be deported to Guatemala, where his cousin – against whom he testified for attacking him with a knife – was deported. Moreover, given the familial relationship between Mr. Agustin-Cabrera and his attacker, it is likely that his cousin would be aware of his presence were Mr. Agustin-Cabrera deported to Guatemala.

Finally, on April 6, 2020, Mr. Agustin-Cabrera was released from ICE custody. His immigration attorney was not advised of the reason for this release, but believes it is due to the current national emergency related to COVID-19. If that is the case, Mr. Agustin-Cabrera will likely be re-arrested, and deported, well before a U Visa could be approved. Even if his current release extends long enough to allow the U Visa to be granted prior to the completion of removal proceedings, however, Mr. Agustin-Cabrera's conviction in this case would continue to present a collateral consequence. Specifically, a marijuana conviction makes him inadmissible, *see* 8 U.S.C. § 1182(a)(2)(A)(ii), and therefore ineligible to remain here, even with a U Visa, absent a waiver. *See id.* § 1182(d)(14). His immigration attorney would apply for such a waiver on his behalf, but whether he would get such a waiver is a matter of discretion; specifically the Secretary of Homeland Security must determine that a waiver would be in the public or national interest. *Id.* Absent the conviction in this

case, however, Mr. Agustin-Cabrera would be automatically permitted to remain in the United States once he receives a U Visa. Accordingly, regardless of whether Mr. Agustin-Cabrera is detained again during the pendency of his removal proceedings, his conviction in this case continues to present an adverse immigration consequence that could prevent him from legally remaining in the United States.

## ARGUMENT

### A. *Legal Standard for a Writ of Coram Nobis*

This Petition asks the Court to grant a writ of coram nobis and vacate Mr. Agustin-Cabrera's conviction pursuant to *Padilla v. Kentucky*, 559 U.S. 356 (2010), which holds that it is ineffective assistance of counsel for a criminal defense attorney not to advise a non-citizen criminal defendant of potential adverse immigration consequences of a conviction. "In its modern form . . . '*coram nobis* is broader than its common-law predecessor' and 'can issue to redress a fundamental error . . . as opposed to mere technical errors.'" *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) (quoting *United States v. Denedo*, 556 U.S. 904, 910-11, 911 (2009)) (internal quotation marks omitted). The Court may issue the writ where "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012)

(quoting *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)); *Bereano*, 706 F.3d 568 at 576.³

> B.   Mr. Agustin-Cabrera Received Constitutionally Ineffective Assistance of Counsel Because He Was Not Advised of the Immigration Consequences of His Guilty Plea

In *Padilla v. Kentucky*, the Supreme Court observed that, under federal law, criminal convictions often result in "drastic" immigration consequences "that dramatically raise[] the stakes of a noncitizen's criminal conviction." 559 U.S. at 360, 364. Accordingly, the Court held, it is ineffective assistance of counsel to provide incorrect legal advice to a non-citizen regarding the immigration consequences of a criminal conviction. Moreover, the Court emphasized, its holding was not limited to "affirmative misadvice" – which, the Court found, would lead to "absurd results" – but also to "silence," which the Court said would be "fundamentally at odds with the critical obligation of counsel to advise the client of the advantages and disadvantages

---

³ Some cases suggest that a fifth element is required to support a writ of coram nobis – a probability that a different result would have occurred but for the error. *See, e.g., Mendoza v. United States*, 774 F.Supp.2d 791, 795 (E.D. Va. 2011) (TSE). That opinion not only conflicts with two more recent published opinions of the Fourth Circuit (*Akinsade* and *Bereano*), but the authority it relies on for its list of elements does not require such an element. Specifically, *Mendoza* relies for its list of elements on three cases. The first is an unpublished Fourth Circuit case, *Scates v. United States*, 914 F.2d 249 (4th Cir. 1990) (unpublished), which requires only the four-element test described above. The other two cases cited in *Mendoza* are equally unavailing. Specifically, *Mendoza* also cited to *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987) (which cites the four-element test), and *Hanan v. United States*, 402 F.Supp.2d 679, 684 (E.D. Va. 2005) (TSE) (which lists the five-factor test by relying solely on *Scates* and *Hirabayashi*, neither of which require the fifth element). Accordingly, the law is clear that probability of a different result is not required. In any event, Mr. Agustin-Cabrera could satisfy that element were it necessary. *See* n. 7 *infra*.

of a plea agreement." *Id.* at 370 (internal quotations and citation omitted). Finally, even where the immigration consequences of a conviction involve "complex" issues of immigration law that render those consequences "unclear or uncertain," *Padilla* requires that an attorney at least "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369.

Here, the evidence overwhelmingly establishes a *Padilla* violation. As an initial matter, the potential for immigration consequences was easily discoverable from the documents provided to defense counsel in discovery. Specifically, the three pages from discovery attached as Exhibit A make clear not only that Mr. Agustin-Cabrera was born in Guatemala, carried a Guatemalan identification card as his only form of identification, and had an Alien Registration Number, but also that his "citizenship" was Guatemalan (negating any possibility that, despite the other indicators of alienage, he had been naturalized).

While the discovery did not establish whether he had lawful status (and if so what type), a conviction for possession of marijuana has concrete and substantial immigration consequences for any alien. For example, a person who (like Mr. Agustin-Cabrera) lacked status at the time of the conviction becomes inadmissible as a result of a single conviction for simple possession of any amount of a controlled substance. *See* 8 U.S.C. § 1182(a)(2)(A)(ii). Inadmissibility, even for a person who already lacks status, has substantial consequences: as already noted, it subjects the person to mandatory detention should removal proceedings be instituted and it prohibits a person from remaining in the United States (absent a discretionary

waiver) even if he or she later obtains status that would otherwise permit them to remain in the country (e.g., as a refugee, an asylee or – as in this case – a crime victim who assisted law enforcement). On the other hand, for an alien who *has* status, a possession-of-marijuana conviction can make the person immediately deportable if he or she has a prior drug-related conviction, or one step closer to deportable if they do not. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (conviction of any offense involving a controlled substance renders a person deportable with the exception a conviction for simple possession of less than 30 grams of marijuana in a single incident).

Finally, the record establishes that Mr. Agustin-Cabrera was not advised of the possibility of adverse immigration consequences prior to entering his guilty plea. As Mr. Brehm states in the attached Declaration, he does not recollect discussing immigration consequences with Mr. Agustin-Cabrera – despite having an independent recollection of the case and the opportunity to refresh his recollection by reviewing the files he kept in the course of his representation. *See* Exh. B. ¶¶ 3-4. Moreover, Mr. Brehm noted that in a possession of marijuana case such as Mr. Agustin-Cabrera's, "it would not have been [his] usual practice to discuss potential immigration consequences." *Id.* ¶ 5.[4] Accordingly, even if the immigration consequences in this case were "complex" – which they were not – Mr. Agustin-Cabrera's representation did not even meet the lower burden that applies in such

---

[4] While the Court is not required under *Padilla* to independently advise a criminal defendant of immigration consequences, there can be no claim in this case that the colloquy "cured" any *Padilla* violation because immigration consequences were not mentioned during the plea hearing. *See* Exhibit C.

cases, which is to "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369. As a result, Mr. Agustin-Cabrera received constitutionally ineffective assistance of counsel because his attorney did not perform the "critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement." *Id.* at 370.[5]

### C. A Writ of Coram Nobis is Appropriate to Remedy a Padilla Violation Where, as Here, a Conviction is Causing Substantial Immigration Consequences of Which the Defendant Only Recently Became Aware

The *Padilla* violation presented here squarely meets all four elements necessary to warrant a writ of coram nobis. The first element – that a more usual remedy is unavailable – is obvious here, where the time for a direct appeal or a petition for habeas corpus has passed, and where Mr. Agustin-Cabrera is no longer subject to this Court's sentence. The second element – a valid reason for not attacking the conviction earlier – is established by *Padilla* itself, the premise of which is that adverse immigration consequences of a plea are beyond the ken of an ordinary criminal defendant. The obvious corollary is that Mr. Agustin-Cabrera cannot be expected to have raised the error until he became aware of the immigration consequences in the last few months. The third element – adverse consequences flowing from the conviction raising an Article III case or controversy – is equally

---

[5] That the original plea was under 18 U.S.C. § 3607 is irrelevant because such a plea (even if not later converted to a conviction) constitutes a "conviction" for purposes of immigration law. That is, it involves an admission of guilt and imposition of a term of probation. *See* 8 U.S.C. § 1101(a)(48)(A) (defining conviction for purposes of immigration law as a finding of guilt coupled with any restriction on liberty).

obvious: Mr. Agustin-Cabrera is likely to be deported as a result of his marijuana conviction before his U Visa application will be heard; indeed, he would be deported to the same country to which his attacker, with whom he has a familial relationship, has recently been deported.[6] And fourth, the error is of "the most fundamental character." It is not a technical error in the proceedings; rather, Mr. Agustin-Cabrera received constitutionally deficient assistance of counsel, who failed to perform the "critical obligation" of a defense lawyer "to advise the client of the advantages and disadvantages of a plea agreement." *Padilla*, 559 U.S. at 370. Indeed, the Fourth Circuit has recognized that ineffective assistance of counsel with respect to immigration consequences constitutes a fundamental error that merits coram nobis relief. *Akinsade*, 686 F.3d at 252-52; *see also Denedo*, 556 U.S. at 914-15 (ineffective assistance of counsel can be remedied by coram nobis); *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) ("ineffective assistance of counsel, if proven, can be grounds for coram nobis relief").[7]

---

[6] Even if Mr. Agustin-Cabrera remains out of ICE custody throughout the pendency of his removal proceedings, his marijuana conviction would continue to present an adverse consequence because it would make him inadmissible to the United States, even with a U Visa, absent a discretionary waiver.

[7] While the fifth element identified by Judge Ellis in *Mendoza* (a "reasonable probability" of a different result, 774 F.Supp.2d at 800) is not required for the reasons explained in note 3, *supra*, Mr. Agustin-Cabrera could in any event satisfy that element. That he can do so illustrates the fundamental character of the *Padilla* violation. Here, had Mr. Agustin-Cabrera been aware of the potential for adverse immigration consequences, he could have rejected the plea offer – and counsel would certainly have advised him of that option. Moreover, he would have had a reasonable probability of achieving a different result. In that case, the government would have had to weigh the public interest in going to trial (in a case involving only 1.1 grams of marijuana and a young defendant with no prior record)

Indeed, while a number of courts have denied coram nobis petitions raising *Padilla* violations, the reasoning in those cases illustrates the strength of the case here. Those cases: i) deny petitions for coram nobis for reasons obviously not applicable here; and ii) never question whether coram nobis would be an appropriate remedy for a *Padilla* violation on appropriate facts. In *Chaidez v. United States*, 568 U.S. 342 (2013), for example, the lower court had granted a writ of coram nobis where an attorney had not advised the defendant of the possible immigration consequences of pleading guilty to mail fraud. The Court of Appeals reversed, however, because the underlying conviction had become final prior to *Padilla*, which the court found to be a "new rule" that did not have retroactive effect under *Teague v. Lane,* 489 U.S. 288 (1989), and the Supreme Court in *Chaidez* affirmed on that ground. 568 U.S. at 346-47. Importantly, only one Justice in *Chaidez* (Justice Thomas, concurring in the Judgment) suggested that relief would not be substantively appropriate on the facts presented, had the underlying conviction – like that here – post-dated *Padilla*. *Id.* at 358-59.[8]

---

against the cost, which would include convening 12 jurors (and a venire much larger) as well as the expense of bringing a chemist to testify. As a result, rejecting the plea offer may well have resulted in a plea to the closure violation, which is a petty offense with a maximum sentence of six months' incarceration. *See* 36 C.F.R. § 1.3(a); 18 U.S.C. § 1865(a). A conviction on that charge would not have carried adverse immigration consequences because it is neither a controlled substance offense nor a crime involving "moral turpitude." *See* 8 U.S.C. § 1182(a)(2)(A)(i). Moreover, petty offenses do not carry immigration consequences, even when they involve moral turpitude, under what is known as the "petty offense exception." *See* 8 U.S.C. § 1182(a)(2)(A)(ii)(II).

[8]   The government in *Chaidez* agreed that eligibility for a writ of coram nobis turns on the same analysis as eligibility for a writ of habeas corpus (but applies

Similarly, Judge Ellis's denial of a petition for coram nobis in *Mendoza* is instructive because it does not question that a writ of coram nobis would be an appropriate remedy for a *Padilla* violation if the elements for such relief are established. *Mendoza*, 774 F.Supp.2d at 795. On the facts of *Mendoza*, however, the court denied the petition for reasons that do not apply here: that the underlying conviction pre-dated *Padilla* (*id.* at 798); that a *Padilla* violation was not established because the attorney disputed the defendant's claim that immigration consequences were not discussed prior to the plea (*id.* at 799 n. 7); and that there was no prejudice because the defendant had been advised during the plea colloquy that she would be "subject to deportation" as a result of the plea and "acknowledged under oath that she understood." *Id.* at 799.[9] Accordingly, application of *Mendoza* to the facts

---

where, as here, the defendant is no longer subject to the sentence). *See Chaidez*, 568 U.S. at 345 n. 1. Accordingly, cases granting habeas relief premised on a *Padilla* violation are instructive. *See, e.g., United States v. Rodriguez-Vega*, 797 F.3d 781, 784 (9th Cir. 2015) (vacating conviction for ineffective assistance of counsel under *Padilla* where counsel failed to inform defendant that 2012 misdemeanor conviction would result in deportation before she pleaded guilty, though the sentencing judge noted that it might result in deportation); *Montes-Flores v. United States*, No. 2:11-CR-032-JMS-CMM, 2013 WL 428024 (S.D. Ind. Feb. 4, 2013) (granting request for § 2255 relief and vacating 2011 plea agreement under *Padilla* where defense counsel told defendant he was unsure of immigration consequences but guilty plea would result in mandatory removal).

[9] The Court in *Mendoza* also found that the defendant failed to meet a fifth element for coram nobis – probability of a different result – which is irrelevant in this case under more recent Fourth Circuit precedent (as explained in note 3 *supra*). 774 F.Supp.2d at 800. Specifically, the Court found that, due to the "overwhelming" strength of the evidence, there was no "reasonable probability that petitioner would have proceeded to trial" but for the error (assuming one had occurred). *Id.* Here, as explained in note 7 *supra*, an attorney who was aware of the immigration consequences of the marijuana charge would likely have counseled the

presented here would result in the opposite outcome. Indeed, at least two courts have reached that result. *See Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014) (granting coram nobis and vacating conviction for misprision of a felony where attorney had incorrectly advised defendant regarding the immigration consequences of plea);[10] *Sandhu v. United States*, No. 2:05-CR-00449-KJM, 2020 WL 417542 (E.D. Cal. Jan. 27, 2020) (granting coram nobis and vacating conviction for manufacturing marijuana under *Padilla* due to attorney's failure to advise defendant of immigration consequences).[11]

## **CONCLUSION**

In light of the facts presented here, and for all the reasons set forth above, Mr. Agustin-Cabrera respectfully submits that this Court should issue a writ or coram nobis and vacate the order finding him guilty of possession of marijuana (doc. 9 ) and the Judgment entering a conviction for that offense (doc. 26).

---

defendant to insist on a trial, and thereby ultimately resolved the case with a plea to the other charge, which carried no immigration consequences.

[10] *Kovacs* involved a pre-*Padilla* conviction, but the coram nobis petition was not subject to the retroactivity bar recognized in *Chaidez* because the court found that Second Circuit law establishing a Sixth Amendment violation for giving incorrect immigration advice was settled prior to the negotiation of the defendant's plea. 744 F.3d at 50-51.

[11] A review of reported cases establishes that the vast majority of coram nobis petitions alleging *Padilla* violations have been denied because they involve pre-*Padilla* convictions. There are two obvious reasons that might explain the lack of reported coram nobis cases involving convictions that post-date *Padilla*: first, defense attorneys are likely following *Padilla's* mandate and providing the necessary advice in most cases since *Padilla*; and second, where they do not, they have a professional interest in denying their failure to give the required advice.

Respectfully submitted,

WERNER AGUSTIN-CABRERA

By Counsel,
Geremy C. Kamens, Esq.
Federal Public Defender

_____/s/_____
Todd M. Richman, Esq.
Va. Bar No. 41834
Counsel for Mr. Agustin-Cabrera
Federal Public Defender Office
Eastern District of Virginia
1650 King Street, Suite 500
Alexandria, VA  22314
Telephone:   703-600-0845
Facsimile:    703-600-0880
Todd_Richman@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 10, 2020, I will file the foregoing document via the CM/ECF system, which will send a notification of such filing to all counsel of record. Further, I will send a copy of the foregoing document, via electronic mail, to Assistant United States Attorney Marc Birnbaum.

                                       /s/
                              Todd M. Richman, Esq.
                              Va. Bar No. 41834
                              Counsel for Mr. Agustin-Cabrera
                              Federal Public Defender Office
                              Eastern District of Virginia
                              1650 King Street, Suite 500
                              Alexandria, VA  22314
                              Telephone:   703-600-0845
                              Facsimile:   703-600-0880
                              Todd_Richman@fd.org